## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NORTH DAKOTA
### SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| Merwin R. Carlson, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION** |
| vs. | ) | **AND ORDER ON** |
| | ) | **MOTION TO DISMISS AND** |
| Roetzel & Andress, an Ohio legal | ) | **CROSS-MOTIONS FOR** |
| professional association; Richard A. | ) | **SUMMARY JUDGMENT** |
| Plewacki; Adrienne L. Stemen; GMR | ) | |
| Transportation, Inc., a North Dakota | ) | Civil No. 3:07-cv-33 |
| corporation; and Dennis Gustafson, | ) | |
| | ) | |
| Defendants. | ) | |

Before the Court are three motions filed by the parties.  Defendants have filed a Motion to Dismiss under Rule 12(b)(6), or in the alternative, a Motion for Summary Judgment (Doc. #14).  Plaintiff has filed a brief in opposition to Defendants' motions, along with a Cross-Motion for Summary Judgment on two of his claims (Docs. #18, #23).  The Court has carefully considered the briefs and documents filed by the parties and now issues this memorandum opinion and order.

### SUMMARY OF DECISION

The Court concludes Carlson does not have an implied private right of action to seek damages for the unauthorized practice of law under N.D.C.C. § 27-11-01, so Defendants' Motion for Summary Judgment as to Count One is GRANTED.  The Court also finds that Defendants are not state actors who may be held liable under 42 U.S.C. § 1983, so Defendants' Motion for Summary Judgment as to Counts Two and Seven is GRANTED.  Carlson's Cross-Motion for Summary Judgment as to Counts One and Two is DENIED.  The Court further concludes Defendants must be GRANTED summary judgment as to Carlson's claims in Count Three, tortious

1

interference with a business or prospective advantage; Count Four, defamation; Count Five, liability under N.D.C.C. § 65-09-02; and Count Six, civil conspiracy.

## **FACTUAL BACKGROUND**

Carlson's action filed in this Court essentially arises from events surrounding his claim for benefits from Workforce Safety & Insurance Fund ("WSI"), the North Dakota workers compensation agency. Because Carlson filed this action while the WSI matter was ongoing, the relevant facts involve an explanation of the concurrent legal proceedings in WSI and in this Court.

Plaintiff Merwin Carlson, a resident of the State of Minnesota, was a truck driver who provided services to Defendant GMR Transportation, Inc. ("GMR Transportation"), a motor carrier engaged in the business of transporting cargo on flatbed trailers. GMR Transportation is a North Dakota corporation with its principal place of business located in West Fargo, North Dakota. Defendant Dennis Gustafson, a resident of the State of North Dakota, is an owner and the president of GMR Transportation.

On July 8, 2005, Carlson sustained injuries in a trucking accident in Auburn, Indiana. About one year later, in early July 2006, Carlson filed a claim for workers compensation benefits from WSI. Carlson sought benefits from WSI as an employee of GMR Transportation. On July 6, 2006, GMR Transportation was notified of Carlson's WSI claim. Shortly therefore, GMR Transportation submitted an independent contractor questionnaire at the request of WSI.

On October 3, 2006, WSI issued a Notice of Decision accepting Carlson's claim and awarding him workers compensation benefits. Gustafson Aff. Ex. D, at 1. In the notice, WSI concluded that Carlson was an employee of GMR Transportation, not an independent contractor. Id. The Notice of Decision, which was also provided to GMR Transportation, informed the parties

how to request reconsideration.  Id.  The notice stated:

> **If you feel this decision is incorrect**, please write to your claims adjuster within 30 days of the date on this notice to request reconsideration.  Please explain why you think the decision is wrong and what you think the correct decision should be.  Also enclose any additional information for WSI to consider.  The request for reconsideration must be in writing from you, not your physician.  If a request for reconsideration is not received within 30 days, this decision will be final.  **If you agree with this decision**, nothing more is required.

Id. at 2.

After receiving the Notice of Decision, GMR Transportation contacted its legal counsel, Defendant Roetzel & Andress, seeking representation in the WSI matter.  Roetzel & Andress is a law firm with offices in Ohio, Florida, and Washington, D.C.  Defendants Richard Plewacki and Adrienne Stemen are attorneys in the Cleveland, Ohio office of the Roetzel & Andress firm.  Plewacki and Stemen are both residents of the State of Ohio and licensed to practice law in Ohio.

Roetzel & Andress claims that after it was notified of the WSI matter, it contacted the State Bar Association of North Dakota ("SBAND") and the office of the North Dakota Attorney General to determine the requirements for local counsel.  Roetzel & Andress further claims it was informed that local counsel would be required when the WSI proceedings were set for a hearing.[1]

On October 13, 2006, GMR Transportation faxed WSI a letter stating that it had retained Roetzel & Andress as counsel in this case.  Gustafson Aff. Ex. F.  On October 13 and 20, 2006, Stemen called WSI to request information submitted by Carlson and his counsel in support of the claim for benefits.  Schoenwald Aff. Ex. 3.  On October 26, 2006, Stemen faxed a letter to WSI requesting reconsideration of the Notice of Decision dated October 3, 2006, on behalf of GMR

---

[1] The Court notes that Defendants have made these assertions in the Answer, and Carlson has not disputed these particular claims in any of his briefs or documents filed in this matter.  At any rate, these facts are not material to the Court's resolution of any of Carlson's claims on summary judgment.

Transportation.  Gustafson Aff. Ex. G.  In that letter, Stemen also requested an extension of time until November 17, 2006, to provide documentation in support of reconsideration.  Id.

On November 10, 2006, in response to a request from WSI, Stemen wrote a letter informing WSI that Roetzel & Andress was the authorized legal representative for GMR Transportation in this matter.  Gustafson Aff. Ex. E.  On November 17, 2006, Plewacki and Stemen submitted a fourteen-page letter brief, along with numerous pages of affidavits and exhibits, in support of the request for reconsideration.  Gustafson Aff. Ex. H; Schoenwald Aff. Ex. 8.  In the letter brief, Plewacki and Stemen provided an extensive analysis of federal regulations governing motor carriers and North Dakota law regarding independent contractors.

On December 28, 2006, an internal e-mail was sent from WSI's legal counsel, Anne Green, to other WSI employees regarding Carlson's claim.  Schoenwald Aff. Ex. 9.  Green's e-mail stated, in relevant part:

> We received significant documentation with the RFR from the employer, much of which disputed the employee's assertions regarding his employment status.  After much discussion and another analysis of these facts against the 20 point test, we have agreed that the relationship here is that of independent contractor and not employer/employee.
>
> The decision was a difficult one, and understandably even more difficult for the claims personnel who must deal with the reversal (read here: Tami).  For that I apologize, however, given the facts, it's the correct decision.

Id.

On January 4, 2007, WSI issued a Notice of Decision reversing its prior order and denying Carlson benefits.  Gustafson Aff. Ex. I.  Based upon review of the additional information submitted by GMR Transportation, WSI concluded that Carlson was an independent contractor, not an employee of GMR Transportation.  Id.  WSI demanded that Carlson repay $18,817.08 in wage loss

benefits and $11,817.87 in medical expenses.  Id.  The Notice of Decision further stated that any request for reconsideration had to be made in writing within 30 days from the date of the notice.  Id.

On January 9, 2007, Carlson requested reconsideration of the decision, claiming that GMR Transportation had not effectively requested reconsideration because its legal counsel was not licensed in North Dakota.  Gustafson Aff. Ex. J., at 11.  On February 20, 2007, WSI issued an Administrative Order denying Carlson benefits on the grounds that he was an independent contractor.  Id. at 2.  On March 3, 2007, Carlson requested a hearing before an Administrative Law Judge ("ALJ") on the matter.

About three weeks later, on March 20, 2007, Carlson filed the instant action in this Court. Carlson's Amended Complaint in this Court alleges seven causes of action against Defendants arising out of the WSI proceedings.  Some of the counts are against all Defendants, and some are against only certain Defendants.  Count One alleges that Roetzel & Andress, Plewacki, Stemen, and Gustafson engaged in the unauthorized practice of law and thereby caused civil damages.  Am. Compl. ¶¶ 18-22.  Count Two alleges that all Defendants are liable under 42 U.S.C. § 1983 for depriving Carlson of a vested property interest without due process of law.  Id. ¶¶ 23-29.  Count Three alleges that all Defendants committed tortious interference with a business or prospective advantage.  Id. ¶¶ 30-33.  Count Four alleges that all Defendants committed defamation by making false and misleading statements to WSI.  Id. ¶¶ 34-37.  Count Five alleges that GMR Transportation is liable under the North Dakota Century Code for failing to secure WSI coverage for Carlson.  Id. ¶¶ 38-40.  Count Six alleges that all Defendants were part of a civil conspiracy to deprive Carlson of workers compensation benefits.  Id. ¶¶ 41-44.  Count Seven requests punitive damages under 42

U.S.C. § 1983 because Defendants showed evil motive or reckless and callous indifference to Carlson's rights.  Id. ¶¶ 45-49.

While Carlson pursued his claims in this Court, the parties continued to litigate the state workers compensation matter.  In a letter dated April 10, 2007, Fargo attorney Beverley Adams submitted a notice of appearance and motions for *pro hac vice* admission by Plewacki and Stemen to the Office of Administrative Hearings ("OAH").  Schoenwald Supp. Aff. Ex. 1, at 2.  Apparently these motions were returned to Adams without action because no ALJ had yet been designated to the case.  Id.  On April 26, 2007, ALJ Rosellen M. Sand was designated to preside over the matter, and OAH staff informed Adams on that same date to redirect the motions for admission *pro hac vice* to ALJ Sand.  Id.  On May 16, 2007, ALJ Sand granted *pro hac vice* admission to Plewacki and Stemen.  Gustafson Aff. Ex. K.  A hearing before the ALJ was scheduled for September 19, 2007.  Gustafson Aff. Ex. L.  The case was subsequently reassigned to ALJ Susan L. Bailey.  Schoenwald Supp. Aff. Ex. 1, at 2.

On September 17, 2007, two days before the hearing, ALJ Bailey issued an order on several prehearing motions.   Schoenwald Supp. Aff. Ex. 1.   ALJ Bailey concluded that GMR Transportation's request for reconsideration, which was submitted through Stemen, did not constitute the unauthorized practice of law because it was a service that could be performed by a non-lawyer.  Id. at 4.  ALJ Bailey further held that although the letter brief submitted by Stemen and Plewacki may have been the unauthorized practice of law, it was purely speculative how much WSI relied on that brief in reaching its decision to deny benefits.  Id. at 5-6.  Because WSI had an obligation to reconsider its decision regardless of the submission of the letter brief, ALJ Bailey concluded it did not follow that the order denying benefits was faulty.  Id. at 6.  ALJ Bailey also

found that Carlson was provided with adequate procedural due process prior to the termination of benefits. Id. at 7.

The evidentiary hearing regarding Carlson's claim for benefits was held before ALJ Bailey on September 19, 2007.  About two months later, on November 14, 2007, ALJ Bailey issued Recommended Findings of Fact and Conclusions of Law.  Pl.'s Resp. to Supplemental Brief Ex. A, at 7.  ALJ Bailey found that Carlson was an independent contractor, not an employee of GMR Transportation, and therefore he was responsible for repayment of benefits which had been paid in error. Id. at 24.  On December 4, 2007, WSI adopted the ALJ's recommendations as its Final Order in the matter. Id. at 5-6.  Carlson has appealed WSI's Final Order to the state district court, and that appeal is still pending. Id. at 1-3.  The Court notes that the district court's ruling may be appealed to the North Dakota Supreme Court, so it appears likely that appeals in the WSI matter will be ongoing for some time. See Genter v. Workforce Safety & Ins. Fund, 2006 ND 237, ¶ 12, 724 N.W.2d 132, 137 (citing N.D.C.C. § 28-32-49).

## DISCUSSION

Defendants have moved to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), or in the alternative, for summary judgment under Fed. R. Civ. P. 56.  Carlson has cross-moved for summary judgment as to Counts One and Two, and opposes dismissal of the remaining claims.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The burden is on the moving party to establish the basis for its motion.  Donovan v. Harrah's Md. Heights Corp., 289 F.3d 527, 529 (8th Cir. 2002).  It is axiomatic that the evidence is viewed in a light most favorable to the non-moving party, and the

non-moving party enjoys the benefit of all reasonable inferences to be drawn from the facts.  See, e.g., Vacca v. Viacom Broad. of Mo., Inc., 875 F.2d 1337, 1339 (8th Cir. 1989) (quotations omitted).  If the moving party shows there are no genuine issues of material fact, the burden shifts to the non-moving party to set forth facts showing a genuine issue for trial.  Donovan, 298 F.3d at 529.

A fact is "material" if it might affect the outcome of the case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The basic inquiry is whether the evidence presents a sufficient disagreement to require full consideration on the merits by a jury, or whether it is so one-sided that one party must prevail as a matter of law.  Diesel Mach., Inc. v. B.R. Lee Indus., 418 F.3d 820, 832 (8th Cir. 2005).

When the unresolved issues in a case are primarily legal rather than factual, summary judgment is particularly appropriate.  Mansker v. TMG Life Ins. Co., 54 F.3d 1322, 1326 (8th Cir. 1995).  However, although summary judgment may be an appropriate and useful tool to avoid useless and time-consuming trials, "[it] should not be granted unless the moving party has established the right to a judgment with such clarity as to leave no room for controversy."  Vacca, 875 F.2d at 1339 (citations omitted).

## I.  Unauthorized Practice of Law

In Count One, Carlson alleges that Roetzel & Andress, Plewacki, Stemen, and Gustafson engaged in the unauthorized practice of law during the WSI proceedings.  Specifically, Carlson contends that Roetzel & Andress, Plewacki, and Stemen committed the unauthorized practice of law when they appeared before WSI without obtaining *pro hac vice* admission in October and November 2006.  Carlson also contends that Gustafson, who is not a lawyer, engaged in the unauthorized

practice of law by purporting to act on behalf of his corporation, GMR Transportation, in the WSI matter.  Carlson further alleges that but for this unauthorized practice of law, WSI would not have terminated his benefits.  He seeks civil damages in excess of $75,000.

Much of the briefing on this claim has focused on whether Roetzel & Andress, Plewacki, and Stemen engaged in the unauthorized practice of law under the North Dakota rules governing multi-jurisdictional practice.  See N.D. Admission to Practice R. 3 (providing for *pro hac vice* admission and registration of non-resident attorneys); N.D.R. Prof. Conduct 5.5 (providing standards for attorney conduct with regard to unauthorized practice of law).  The parties have set forth differing interpretations of these rules as they apply to actions before administrative agencies.  Specifically, the parties disagree about the point at which *pro hac vice* admission is required for an out-of-state lawyer in an administrative agency proceeding.

However, the Court need not reach this issue of rule interpretation, nor decide whether Defendants have engaged in the unauthorized practice of law, because Carlson has no implied private right of action for damages under N.D.C.C. § 27-11-01.

The Court has thoroughly reviewed the relevant statutes and case law, and it appears that North Dakota has never expressly recognized a civil action for damages based on the unauthorized practice of law.  Perhaps acknowledging the lack of express authority for such an action, Carlson contends he has an implied private right of action for money damages under N.D.C.C. § 27-11-01.  Section 27-11-01 provides:

> Except as otherwise provided by state law or supreme court rule, a person may not practice law, act as an attorney or counselor at law in this state, or commence, conduct, or defend in any court of record of this state, any action or proceeding in which the person is not a party concerned, nor may a person be qualified to serve on a court of record unless that person has:

1. Secured from the supreme court a certificate of admission to the bar of this state; and
2. Secured an annual license therefor from the state board of law examiners.

Any person who violates this section is guilty of a class A misdemeanor.

Carlson argues that Defendants have committed the unauthorized practice of law in violation of § 27-11-01, and a private cause of action for damages must be recognized in order to provide him with an adequate remedy.

In a diversity case, where neither the legislature nor the highest court in a state has addressed an issue, the federal court must determine what the highest state court would probably hold were it called upon to decide the issue. Dahl v. Conagra, Inc., 998 F.2d 619, 621 (8th Cir. 1993) (quotation omitted). When determining whether to imply a private right of action under a state statute, the North Dakota Supreme Court applies the first three factors of the test enunciated in Cort v. Ash, 422 U.S. 66, 78 (1975). See Ernst v. Burdick, 2004 ND 181, ¶ 11, 687 N.W.2d 473, 477; Trade 'N Post, LLC v. World Duty Free Americas, Inc., 2001 ND 116, ¶ 13, 628 N.W.2d 707, 711. Those three factors are: (1) whether the plaintiff is one of the class for whose special benefit the statute was enacted; (2) whether there is an indication of legislative intent, explicit or implicit, either to create such remedy or to deny one; and (3) whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff. Ernst, 2004 ND 181, ¶ 11, 687 N.W.2d at 477.

The theory of implied private actions is basically a matter of statutory construction. R.B.J. Apartments, Inc. v. Gate City Sav. & Loan Assoc., 315 N.W.2d 284, 287 (N.D. 1982). Whether a statute creates a private right of action is ultimately a question of legislative intent, and an implied private right of action must be within the statutory scheme to exist. Trade 'N Post, 2001 ND 116, ¶ 13, 628 N.W.2d at 711. Unless legislative intent to create a particular cause of action may be

"inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist."  Id. at 711-12 (quoting Thompson v. Thompson, 484 U.S. 174, 179 (1988)).  The legislature's silence in failing to expressly provide a private right of action is a strong indication it did not intend such a remedy.  Ernst, 2004 ND 181, ¶ 13, 687 N.W.2d at 478.  The party claiming an implied right of action bears the burden of proving that the legislature intended to create the remedy.  Id. ¶ 10, 687 N.W.2d at 477.

As to the first factor, Carlson argues he is one of the class for whose special benefit § 27-11-01 was enacted.  The Court is inclined to agree.  The North Dakota Supreme Court has stated that "the statute is clearly intended to provide protection to our citizens from unlicensed and unauthorized practice of law."  Ranta v. McCarney, 391 N.W.2d 161, 163 (N.D. 1986); see also State v. Niska, 380 N.W.2d 646, 649 (N.D. 1986) (stating that "§ 27-11-01 is aimed at preventing the harm caused by unqualified persons performing legal services for others").  However, the Court also recognizes that § 27-11-01 provides a criminal penalty for its violation, and criminal statutes have been viewed as a disfavored basis for inferring private rights of action because they "are usually couched in terms that afford protection to the general public instead of a discrete, well-defined group."  See Frison v. Zebro, 339 F.3d 994, 999 (8th Cir. 2003) (quoting Doe v. Broderick, 225 F.3d 440, 447-48 (4th Cir. 2000)).  Nevertheless, based on the North Dakota case law discussing the purpose of § 27-11-01, the Court concludes that Carlson is a member of the class, namely, the general public, for whose special benefit the statute was enacted.

The second factor to consider is whether there is any indication of legislative intent, either explicit or implicit, to create or deny a private cause of action for money damages under the statute.  The only remedy explicitly provided in § 27-11-01 is a criminal penalty for violators.  Therefore,

11

the North Dakota Legislature's failure to expressly provide a private right of action for damages is a strong indication it did not intend that remedy.  See Ernst, 2004 ND 181, ¶ 14, 687 N.W.2d at 478 ("In construing statutes, this Court has recognized the maxim *expressio unius est exclusio alterius*, which means the mention of one thing implies the exclusion of another.").

In his discussion of the second factor, Carlson conflates the analysis of the first and second factors.  He contends that legislative intent to allow a private right of action under § 27-11-01 may be inferred because the statute is intended to protect the public, and it should be liberally construed with a view to effecting its objects and promoting justice.  See Ranta, 391 N.W.2d at 164.  However, aside from this broad statement, Carlson has not pointed to anything in the language of § 27-11-01, the legislative history, or the surrounding statutory scheme which shows that the Legislature intended to provide a private right of action for damages under § 27-11-01.

The Court has reviewed the legislative history which is available for N.D.C.C. § 27-11-01. Unfortunately, there is no legislative history dating back to the enactment of the statute in 1905, nor for any of the amendments prior to 1959.  Legislative history is available for the four most recent amendments, which occurred in 1975, 1977, 1983, and 2001.  After reviewing that legislative history which has been preserved, the Court finds it is silent with regard to individual rights under the statute or private causes of action for damages.

The Court has also reviewed the statutory scheme in the surrounding chapters of the North Dakota Century Code, particularly Chapter 27-13, which governs conduct of attorneys.  See Trade 'N Post, 2001 ND 116, ¶ 21, 628 N.W.2d at 714 ("Statutes should be read in relation to other statutes involving the same or similar subject matter in an attempt to discern legislative intent.").  Section 27-13-08 provides that an attorney who commits certain misconduct "is guilty of a class A

12

misdemeanor and in addition forfeits to the party injured treble damages to be recovered in a civil action." Section 27-13-09 provides that any attorney who knowingly permits any person to use her name is guilty of a class A misdemeanor. Section 27-13-11 provides that any attorney who is the partner of a public prosecutor yet aids or promotes the defense "is guilty of a class A misdemeanor and in addition to the punishment prescribed therefor, that attorney forfeits that attorney's license to practice." The Court considers it significant that the Legislature has provided for remedies other than criminal penalties in several of these related statutes. In particular, the Court notes that in § 27-13-08, the Legislature has provided for damages to be recovered in a civil action, which is exactly the remedy Carlson seeks to assert under § 27-11-01. Clearly, the Legislature knew how to create a private right of action for damages, if that was its intent. See Trade 'N Post, 2001 ND 116, ¶ 23, 628 N.W.2d at 714. "When a statute that fails to expressly provide a private right of action is flanked by a related statute that does expressly create such a remedy, it is an indication the legislature did not intend to create a private right of action by implication." Id.

Carlson attempts to distinguish § 27-11-01 from the statute at issue in Trade 'N Post on the basis that § 27-11-01 does not expressly include a comprehensive regulatory scheme. However, whether there is a comprehensive regulatory scheme is only one factor to consider in determining legislative intent, see Trade 'N Post, 2001 ND 116, ¶ 17, 628 N.W.2d at 712-13, and the absence of such a scheme clearly does not require implication of a private cause of action. See Ernst, 2004 ND 181, ¶¶ 13-16, 687 N.W.2d at 478 (containing no mention of a comprehensive regulatory scheme, yet still concluding there was no implied private right of action).

Furthermore, this is not a case where the statute has no enforcement mechanism. See Trade 'N Post, 2001 ND 116, ¶ 19, 628 N.W.2d at 713. First, those who commit the unauthorized practice

of law in violation of § 27-11-01 may be criminally prosecuted.  Carlson claims it is unlikely that a state's attorney would prosecute a misdemeanor charge against an out-of-state defendant, but he has presented no evidence to support that claim.[2]  A criminal penalty is the remedy chosen by the Legislature, and it is not this Court's province to second-guess that remedy.  See Trade 'N Post, 2001 ND 116, ¶ 31, 628 N.W.2d at 716 (quoting Thompson v. Thompson, 484 U.S. 174, 179 (1988)) ("We 'will not engraft a remedy on a statute, no matter how salutary, that [the legislature] did not intend to provide.'").

Additionally, the North Dakota Supreme Court has been vested with the authority to "make all necessary rules for the restraint of persons unlawfully engaging in the practice of the law in this state."  N.D.C.C. § 27-02-07; see also N.D. Const. art. VI, § 3, cl. 1 (vesting the supreme court with the authority "to promulgate rules and regulations for the admission to practice, conduct, disciplining, and disbarment of attorneys at law").  Through promulgation of various rules, including the Rules of Professional Conduct, the Admission to Practice Rules, and the Rules for Lawyer Discipline, the North Dakota Supreme Court has established a comprehensive system for regulation of attorney conduct.  Carlson incorrectly asserts that the disciplinary rules have little impact on out-of-state lawyers.  Under N.D.R. Prof. Conduct 8.5(b), "[p]ersons not licensed to practice law in this jurisdiction, but eligible to practice elsewhere who actually engage in this jurisdiction in the practice of law, are subject to the disciplinary authority of this jurisdiction."  Therefore, attorneys who are licensed in other states may be held accountable in North Dakota if they engage in the unauthorized practice of law here.

---

[2]  The Court also notes that Carlson seems to have overlooked the fact that not all of the Defendants named in Count One are from out-of-state, as Gustafson is a resident of North Dakota.

Finally, the Court notes that it has reviewed the cases from other jurisdictions cited by Carlson and concludes they are not persuasive authority here.  Whether N.D.C.C. § 27-11-01 creates an implied private right of action is a question of legislative intent, and authority from other jurisdictions does not provide any insight into the North Dakota statutory scheme.  Furthermore, most of the cases cited by Carlson do not involve implication of a private right of action for unauthorized practice of law under a state statute, so they are easily distinguishable from the issue presented here.  It also appears that many of these cases involve a tort-based claim for unauthorized practice of law based on public policy concerns, which is different from the claim Carlson has asserted in this case.  See, e.g., Latson v. Eaton, 341 P.2d 247, 248 (Okla. 1959); Kim v. Desert Document Servs., Inc., No. 44451-5-I, 2000 WL 987005, at *5 (Wash. App. Ct. July 17, 2000); Brammer v. Taylor, 338 S.E.2d 207, 212 (W. Va. 1985).  The North Dakota Supreme Court has recognized the distinction between implied private rights of action and common law torts:

> Consideration of public policy is appropriate only if the Court is determining whether to create a separate, common-law tort.  If it is merely deciding whether an implied private right of action exists under the statute, it may only consider whether the legislature intended such a remedy, not whether in the Court's view a particular result is better from a policy standpoint.

Trade 'N Post, 2001 ND 116, ¶ 30, 628 N.W.2d at 715.  Although the North Dakota courts may recognize a common law tort for unauthorized practice of law in the future, that is not the question before this Court.

Based on the foregoing analysis, the Court concludes there is no private right of action for damages under N.D.C.C. § 27-11-01.  Carlson has not met his burden of proving that the North Dakota Legislature intended to create such a remedy under the statute.  Because the analysis fails

on the second factor, the Court need not address the third factor to determine whether implication of a private cause of action is consistent with the underlying purposes of the legislative scheme.

Because there are no genuine issues of material fact, and Carlson has no implied private cause of action for damages under N.D.C.C. § 27-11-01 as a matter of law, Defendants' Motion for Summary Judgment as to Count One is GRANTED.   Carlson's Cross-Motion for Summary Judgment as to Count One is DENIED.

## II.  Civil Liability under 42 U.S.C. § 1983

In Count Two, Carlson alleges a cause of action against all Defendants under 42 U.S.C. § 1983 for violating his due process rights and thereby depriving him of a property interest.   In particular, Carlson contends that Defendants were state actors for purposes of liability under § 1983 because they jointly participated and conspired with WSI to deprive him of his constitutional right to due process and to manipulate the state workers compensation laws in order to cause termination of his benefits.

Section 1983, Title 42 U.S.C., affords redress against a person who, under color of state law, deprives another person of any federal constitutional or statutory right.  Young v. Harrison, 284 F.3d 863, 866 (8th Cir. 2002).  Because § 1983 applies only to actions taken under color of state law, it does not reach merely private conduct, no matter how discriminatory or wrongful.  Ams. United for Separation of Church and State v. Prison Fellowship Ministries, Inc., 509 F.3d 406, 421 (8th Cir. 2007).  A party's conduct is considered to be "under color of state law" for purposes of § 1983 if that conduct meets the requirements for state action.  Wickersham v. City of Columbia, 481 F.3d 591, 597 (8th Cir. 2007); see also Youngblood v. Hy-Vee Food Stores, Inc., 266 F.3d 851, 855 (8th Cir. 2001) ("Only state actors can be held liable under Section 1983.").

16

State action may be found if, though only if, there is such a close nexus between the state and the challenged action that seemingly private behavior may be fairly treated as that of the state itself. Prison Fellowship Ministries, 509 F.3d at 422. The court must examine the record to decide whether the conduct at issue is "fairly attributable" to the state. Wickersham, 481 F.3d at 597. The United States Supreme Court has established a two-part inquiry to determine whether there is state action in a particular case: (1) the deprivation must be caused by the exercise of some right or privilege created by the state, or by a rule of conduct imposed by the state, or by a person for whom the state is responsible; and (2) the party charged with the deprivation must be a person who may fairly be said to be a state actor. Prison Fellowship Ministries, 509 F.3d at 422 (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982)).

In certain circumstances, a private party may be characterized as a state actor. See, e.g., Wickersham, 481 F.3d at 597. A private party who willfully participates in joint activity with the state or its agents is considered a state actor. Youngblood, 266 F.3d at 855 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970)). It is clear that a private entity acts under color of state law when engaged with state officials in a conspiracy to deprive a person of federal constitutional rights. Dossett v. First State Bank, 399 F.3d 940, 951 (8th Cir. 2005). Under § 1983, a plaintiff must establish not only that a private actor caused a deprivation of constitutional rights, but also that the private actor willfully participated with state officials and reached a mutual understanding concerning the unlawful objective of a conspiracy. Id.

When determining whether a private party may properly be classified as a state actor, the one unyielding requirement is that there be a close nexus not merely between the state and the private party, but between the state and the alleged deprivation itself. Prison Fellowship Ministries, 509

F.3d at 422.   There is no such nexus when a private party acts with the mere approval or acquiescence of the state.   Wickersham, 481 F.3d at 597.   Furthermore, a private party's mere invocation of state legal procedures does not constitute joint participation or conspiracy with state officials.   See, e.g., Youngblood, 266 F.3d at 855 (rejecting plaintiff's argument that a grocery store engaged in state action when it detained him to investigate whether he had been shoplifting, as permitted by a state statute); Miller v. Compton, 122 F.3d 1094, 1098 (8th Cir. 1997) (concluding that a private attorney was not a state actor when she referred a client to a government victim assistance program and answered questions from the county prosecutor's office regarding the client's tumultuous relationship with her ex-husband).   Nor does a private person conspire with a state official merely by invoking an exercise of the state official's authority.   See Young, 284 F.3d at 870 (finding no evidence of a conspiracy when a hotel security guard called the police for assistance with unruly guests and accompanied the officers to the guests' room).   The Eighth Circuit has stated that the conduct of private attorneys generally does not constitute action under color of state law.   See DuBose v. Kelly, 187 F.3d 999, 1003 (8th Cir. 1999).

In order to defeat a motion for summary judgment, the plaintiff must offer evidence sufficient to support the conclusion that the defendants directed themselves toward an unconstitutional action by virtue of a mutual understanding, and provide facts which would establish a meeting of the minds.   Id.   In DuBose v. Kelly, 187 F.3d 999, 1003 (8th Cir. 1999), the Eighth Circuit concluded that the plaintiff DuBose had submitted sufficient evidence to survive a motion for summary judgment filed by defendants, who were private attorneys.   DuBose alleged that the private attorneys had conspired with the trial judge to deprive him of due process and fix the outcome of a lawsuit he had filed against his former counsel, Newton Friedman.   Id. at 1001.   In support of this allegation,

DuBose submitted an affidavit stating that he overheard a conversation in the judge's chambers just prior to trial in which the judge, Friedman, and the private attorneys who represented Friedman conspired "to prevent the Defendant Newton S. Friedman from being damaged in the above-referenced matter as they were going over each and every trial exhibits . . . ." Id.  DuBose further averred that the trial judge told the attorneys that "[a]ll of affiant's trial exhibits are covered" and "Defendant Newton S. Friedman can enjoy his retirement."  Id.

In concluding that DuBose had produced sufficient evidence to survive a motion for summary judgment, the Eighth Circuit stated:

> We emphasize that more is involved here than a simple display of cordiality between a judge and the lawyers for one party.  More is involved than an ex parte contact between the judge and these lawyers.  Such incidents can create an appearance of impropriety, and can, in some circumstances, violate ethical norms, but they are not usually serious enough to justify an inference of deliberate bias or prejudgment.  For us, the key factor in the case is the Judge's assurance, given in private to Mr. Friedman, that he could "enjoy his retirement," and that Mr. DuBose's "trial exhibits [were] . . . covered . . ."  In context, these statements could reasonably be taken by a finder of fact to mean that the judge, Mr. Friedman, and Mr. Friedman's lawyers had all agreed, in advance, that Mr. Friedman would win the case.  The lawyers' continued appearance before the judge with the knowledge that such an assurance had been given would justify an inference that they had acquiesced in this corrupt agreement.

Id. at 1003.  The Eighth Circuit further stated, "Whether [DuBose's] account is to be believed is a matter for the jury."  Id. at 1004.

Applying the foregoing principles to the facts of this case, the Court concludes that Defendants are not state actors as a matter of law, and therefore they may not be held liable for damages under 42 U.S.C. § 1983.  Carlson asserts that Defendants willfully participated and conspired with WSI officials to deprive him of due process and terminate his workers compensation

benefits.  However, the evidence he has produced in support of this contention is not sufficient to survive Defendants' motion for summary judgment.

The Defendants in this matter are Carlson's former employer,[3] a private law firm, and the private attorneys who were retained to represent the employer in the proceedings before WSI.  The relevant contacts which Defendants have had with WSI are undisputed.  At most, Carlson has shown the following facts:  (1) that GMR Transportation informed WSI it had retained Roetzel & Andress as counsel; (2) that attorney Stemen called WSI to request the information submitted by Carlson in support of his claim for benefits; (3) that attorney Stemen requested reconsideration of the initial decision awarding Carlson benefits, as permitted by N.D.C.C. § 65-01-16, on behalf of GMR Transportation; (4) that WSI requested, and Stemen provided, a notice of appearance identifying Roetzel & Andress as GMR Transportation's legal counsel; (5) that attorneys Plewacki and Stemen submitted a letter brief and documentation in support of the request for reconsideration; and (6) that WSI reversed its prior order and denied Carlson benefits after reviewing the additional information submitted by Defendants.

The Court finds these facts simply do not support an inference that Defendants were willfully participating in joint activity and conspiring with WSI to deprive Carlson of due process. Defendants were merely invoking the reconsideration process as permitted by state statute, which does not transform them into state actors for purposes of § 1983 liability.  Taken to its logical conclusion, Carlson's position would transform all private attorneys and their clients who use legal procedures established by state law into "state actors" who may be held liable under § 1983.  Such

_____

[3] The Court uses the term "employer" only for simplicity's sake, not to express any opinion with regard to whether Carlson was an employee of GMR Transportation or an independent contractor.

a result "would have obvious and unfortunate consequences and has no support in precedent or common sense." See Miller, 122 F.3d at 1098. Furthermore, the fact that Defendants' contacts with WSI were ex parte is not enough to justify an inference of deliberate bias or prejudgment against Carlson. See DuBose, 187 F.3d at 1003.

Other than Carlson's conclusory allegations of joint activity, there is no evidence in the record that Defendants reached a mutual understanding with WSI to deprive Carlson of due process or workers compensation benefits. Nor is there any evidence of a meeting of the minds or a corrupt conspiracy. The Court views this case as clearly distinguishable from DuBose, where the plaintiff claimed to have overheard a conversation between the judge and the private attorneys fixing the outcome of his trial. On the contrary, in this case, there is actually evidence to support the conclusion that WSI reached an independent decision to deny Carlson benefits, namely, the internal WSI e-mail dated December 28, 2006. In that e-mail, WSI's legal counsel stated that the agency made a "difficult" decision to reverse Carlson's benefits "[a]fter much discussion and another analysis of these facts." After reviewing the entire record, the Court is convinced Carlson has not produced sufficient evidence which would enable a rational factfinder to conclude that Defendants and WSI were engaged in "concerted action tantamount to substituting the judgment of a private party for that of the [state] or allowing the private party to exercise state power." See Young, 284 F.3d at 870.

The Court notes that Carlson has raised the due process issue in the state court proceedings against WSI. If Carlson has been deprived of procedural due process by WSI, which is the true state actor in this case, he will prevail in state court. However, the private party Defendants in this action

may not be held liable under 42 U.S.C. § 1983 for their mere invocation of legal procedures in Carlson's state workers compensation proceedings.

The Court concludes the Defendants are not state actors for purposes of liability under 42 U.S.C. § 1983, so Defendants' Motion for Summary Judgment as to Count Two is GRANTED. Carlson's Cross-Motion for Summary Judgment as to Count Two is DENIED.  Because Carlson's claim for punitive damages in Count Seven is dependent upon liability under 42 U.S.C. § 1983, the Court also GRANTS the Defendants summary judgment as to that count.

### III.  Tortious Interference with Business or Prospective Advantage

In Count Three, Carlson alleges that all Defendants have committed tortious interference with a business or prospective advantage.  Specifically, Carlson contends that Defendants tortiously interfered with his workers compensation benefits, which constituted a business interest or economic advantage.  He further contends that he has incurred damages as a direct and proximate result of that interference.

In Trade 'N Post, LLC v. World Duty Free Americas, Inc., 2001 ND 116, ¶ 32, 628 N.W.2d 707, the North Dakota Supreme Court expressly recognized the common law tort of unlawful interference with business.  See also Lochthowe v. C.F. Peterson Estate, 2005 ND 40, ¶ 16, 692 N.W.2d 120, 126.  In order to prevail on a claim for unlawful interference with business, a plaintiff must prove five essential elements:  (1) the existence of a valid business relationship or expectancy; (2) knowledge by the interferer of the relationship or expectancy; (3) an independently tortious or otherwise unlawful act of interference by the interferer; (4) proof that the interference caused the harm sustained; and (5) actual damages to the party whose relationship or expectancy was disrupted. Trade 'N Post, 2001 ND 116, ¶ 36, 628 N.W.2d at 717.  It is not enough for a plaintiff to show a

mere possibility that he would have obtained some economic benefit in the absence of a defendant's interference.  Bertsch v. Duemeland, 2002 ND 32, ¶ 24, 639 N.W.2d 455, 462.  Rather, the plaintiff must show he would have obtained the economic benefit in the absence of the interference.  Id.

It appears to the Court that tortious interference with a business or prospective advantage simply does not apply on the facts of this case.  Carlson asserts that Defendants have tortiously interfered with "a sufficient and valid relationship" between himself and WSI, and that interference resulted in the loss of his workers compensation benefits.  Certainly any relationship there may have been between Carlson and WSI was not a business relationship.  Carlson is a workers compensation claimant, and WSI is the state agency responsible for implementing and regulating the workers compensation scheme.  Furthermore, Carlson's use of the term "prospective advantage" does not change the fact that any relationship which may exist between Carlson and WSI is ill-suited to application of this business-centered tort.  See W. Page Keeton, Prosser and Keeton on Torts § 130 (5th ed. 1984) (discussing tort liability for interference with prospective advantage and focusing primarily on business or employment relationships).

Moreover, Carlson has cited no authority in support of his novel argument that the tort of unlawful interference with business applies to his claim for workers compensation benefits from WSI.  The North Dakota Supreme Court has never held that tortious interference extends to situations other than a contractual or business relationship.  See, e.g., Lochthowe, 2005 ND 40, ¶¶ 5, 20, 692 N.W.2d at 123, 127 (upholding tortious inference claim when an illegal agricultural supplier's lien damaged claimant's credit, made it impossible for him to sell grain, and delayed his ability to pay creditors); Mr. G's Turtle Mountain Lodge, Inc. v. Roland Twp., 2002 ND 140, ¶¶ 24-29, 651 N.W.2d 625, 632-33 (affirming grant of summary judgment because claimant failed to

present evidence that letters to the editor caused prospective bidders to refrain from bidding on property he was trying to sell). Indeed, the North Dakota Supreme Court's analysis in the Trade 'N Post case, which first expressly recognized the tort of unlawful interference with business, focuses primarily on claims of interference by business competitors. See Trade 'N Post, 2001 ND 116, ¶¶ 39-43, 628 N.W.2d at 718-21.

The Court is not convinced that the tort of unlawful interference with business, as it has been recognized in North Dakota, has any application to the facts of this case. Defendants' Motion for Summary Judgment as to Count Three is GRANTED.

### IV. Defamation

In Count Four, Carlson alleges that all Defendants are liable for defamation because they made "numerous false and misleading statements to WSI for the express purpose of convincing WSI to terminate and revoke [his] workers' compensation benefits." Am. Compl. ¶ 35. At the oral argument hearing on these motions, Carlson voluntarily withdrew the defamation claim. The Court concludes this voluntary withdrawal was appropriate, as Carlson has never pointed to any particular statements by any of the Defendants which would give rise to a claim for defamation. The Court finds that Carlson's voluntary withdrawal has rendered Count Four MOOT, so Defendants' Motion for Summary Judgment as to Count Four is GRANTED.

### V. Liability under N.D.C.C. § 65-09-02

In Count Five, Carlson alleges that Defendant GMR Transportation unlawfully failed to secure WSI coverage for him, and therefore GMR Transportation is liable for his work-related injuries under N.D.C.C. § 65-09-02.

Section 65-09-02, N.D.C.C., provides in relevant part:

> An employee whose employer is in violation of section 65-04-33, who has been injured in the course of employment, or the employee's dependents or legal representatives in case death has ensued, may file an application with the organization for an award of compensation under this title and in addition may maintain a civil action against the employer for damages resulting from the injury or death.  In the action, the employer may not assert the common-law defenses of:
>    1. The fellow servant rule.
>    2. Assumption of risk.
>    3. Contributory negligence.
> The organization is subrogated to the recovery made in the action against the uninsured employer. . . . A determination by the organization that a person is not an employer required to obtain workforce safety and insurance coverage under this title is a defense to any claim that the person failed to obtain coverage for the time period during which the determination is effective.

The North Dakota Supreme Court has construed this statute and held that it provides dual remedies against an uninsured employer.  See Gepner v. Fujicolor Processing, Inc., 2001 ND 207, ¶ 18, 637 N.W.2d 681, 686.  An injured employee of an uninsured employer may seek and recover workers compensation benefits from WSI.  Id.  The injured employee may also "sue the employer in tort for damages" resulting from the work injury.  Id.

The North Dakota Supreme Court has clearly recognized that "[t]he civil action created under N.D.C.C. § 65-09-02 is in the nature of a tort action."  Id. ¶ 21, 637 N.W.2d at 687.  In reaching that conclusion, the court referred to the legislative history to the 1995 amendment of the statute, which "clarifies that it is a personal injury lawsuit, not limited to the remedies available under the Workers Compensation Act."  Id.  Indeed, under the modern statutory scheme, an uninsured employer is not absolutely liable to an injured employee, without regard to fault, simply because the employer has failed to comply and secure coverage.  See id. ¶ 24, 637 N.W.2d at 687-88; see also Kempel v. Streich, 196 N.W.2d 589, 591-92 (N.D. 1972) (describing the strict liability

provisions for non-complying employers under a prior version of the workers compensation statutory scheme).

The Court finds that Carlson has neither pleaded nor proved sufficient facts to maintain a civil action against GMR Transportation under N.D.C.C. § 65-09-02.  Carlson merely alleges that GMR Transportation was a non-complying employer because it failed to obtain WSI coverage, and accordingly, GMR Transportation is liable for his work-related injuries.  However, § 65-09-02 does not provide for strict liability against an uninsured employer in a civil action, but rather provides that an injured employee may bring a separate civil action for personal injury damages based upon tort principles.  The fact that the statute does not explicitly contain the terms "tort" or "personal injury" is not dispositive.  The North Dakota Supreme Court has clearly held the statute provides only for a civil tort action based on the legislative history.  Furthermore, the language of the statute which prohibits the employer from asserting the common law defenses of the fellow servant rule, assumption of risk, and contributory negligence would be mere surplusage if an uninsured employer were to be held strictly liable.  See State v. Laib, 2002 ND 95, ¶ 13, 644 N.W.2d 878, 882 ("We interpret statutes to give meaning and effect to every word, phrase, and sentence, and do not adopt a construction which would render part of the statute mere surplusage.").

Based on the foregoing, the Court concludes that Carlson has neither pleaded nor proved sufficient facts to support a tort claim for personal injuries under N.D.C.C. § 65-09-02.  Therefore, summary judgment in favor of GMR Transportation on this claim is appropriate.  However, the Court also notes that Carlson is only entitled to bring a separate tort action against GMR Transportation under § 65-09-02 if he is an employee, not an independent contractor.  Because the independent contractor issue is currently on appeal in the state court proceedings, the Court finds

26

it appropriate to dismiss this claim without prejudice.  If Carlson wins on appeal in state court and is ultimately found to be an employee, he may then file a tort action against GMR Transportation under § 65-09-02 to recover personal injury damages.

Defendants' Motion for Summary Judgment is GRANTED as to Count Five, and that claim is dismissed without prejudice.

## VI. Civil Conspiracy

In Count Six, Carlson alleges that all Defendants were part of a civil conspiracy to deprive him of workers compensation benefits and to preclude GMR Transportation from securing WSI coverage.  Carlson further contends that all Defendants conspired with WSI to deprive him of his due process rights.

A civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another and an overt act that results in damages.  Peterson v. N.D. Univ. Sys., 2004 ND 82, ¶ 27, 678 N.W.2d 163, 174.  The Court finds that Carlson has produced no evidence of a civil conspiracy in this case.  There is no evidence that GMR Transportation and Gustafson entered into an agreement with their legal counsel, Roetzel & Andress, Plewacki, and Stemen, to inflict a wrong against Carlson by depriving him of workers compensation benefits.  At most, Plewacki and Stemen agreed to provide legal services for GMR Transportation and Gustafson in the WSI proceedings.  The Court fails to see how an agreement to provide legal services during a contested workers compensation matter gives rise to a civil conspiracy.  Carlson had no right to expect that his claim for workers compensation benefits would proceed through WSI without opposition.

27

Likewise, there is no evidence that any of the Defendants had an agreement with WSI to inflict injury upon Carlson by depriving him of due process rights.  Indeed, any claim of a civil conspiracy is belied by the internal WSI e-mail dated December 28, 2006, regarding reversal of Carlson's claim for benefits.  That e-mail clearly indicates that WSI conducted an independent evaluation of the materials submitted by the parties and made the "difficult" decision to deny Carlson benefits.  If WSI had already entered into an agreement with Defendants to deprive Carlson of his due process rights, presumably for the purpose of manipulating the system to deny him benefits, there would have been no difficult decision for WSI to make.

The Court finds there are no genuine issues of material fact with regard to Count Six, and Defendants are entitled to judgment as a matter of law.  Defendants' Motion for Summary Judgment as to Count Six is GRANTED.

## DECISION

Defendants' Motion for Summary Judgment is **GRANTED** as to all of the counts asserted in the Amended Complaint.  Carlson's Cross-Motion for Summary Judgment on Counts One and Two is **DENIED**.  Counts One, Two, Three, Six, and Seven are hereby **DISMISSED** with prejudice.  Count Four has been voluntarily withdrawn by Carlson and is therefore **DISMISSED** as moot.  Count Five is **DISMISSED** without prejudice.

**IT IS SO ORDERED.**

Dated this 27th day of March, 2008.

_____/s/   Ralph R. Erickson_____
Ralph R. Erickson, District Judge
United States District Court

28